# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

IN RE:

**AMERICAN BERBER, INC.,[1]**

      **Debtor.**

**CHAPTER 11**

**CASE NO. 19-41154-BEM**

## PLAN OF REORGANIZATION

**Dated this 12th day of October, 2020**

Filed by:

American Berber, Inc.
Debtor and Debtor in Possession

Attorneys for Debtor in Possession:

Cameron M. McCord
Jones & Walden, LLC
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300

---

[1] By Order dated August 28, 2019, the Court substantively consolidated the cases of American Berber, Inc, Case No. 19-41154-BEM, and American Carpet Group, Inc., Case No. 19-41150. *See* Case No. 19-41154, Doc No. 63; Case No. 19-41150, Doc. No. 35.

COMES NOW American Berber, Inc. and American Carpet Group, Inc. as substantively consolidated by order of this Court  (collectively "Debtor") Debtor and Debtor in possession in the above-captioned case ("Debtor"), and, pursuant to sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against Debtor.  Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

**Article 1**
**Introduction**

1.1     Disclosure Statement.  Contemporaneously with the filing of the Plan, Debtor filed and served a Disclosure Statement for the Plan, as required by section 1125 of the Bankruptcy Code.  The Disclosure Statement contains Debtor's history, financial information regarding Debtor and its assets, and a solicitation of acceptances of this Plan.

1.2     Property and Claims.  This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

**Article 2**
**Definitions and General Provisions**

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1     The following terms, when used in this Plan, shall have the following meaning:

2.1.1   "Administrative Expense Claim" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2   "Allowed Claim" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 or 503 of the Bankruptcy Code.

2.1.3   "Allowed Secured Claim" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4   "Allowed Unsecured Claim" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5   "Assets"  means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtor (including without limitation, all of the assets,

property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6   "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7   "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8   "Bankruptcy Case" means the chapter 11 case initiated by Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9   "Bankruptcy Code" means title 11 of the United States Code.

2.1.10  "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Rome Division.

2.1.11  "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12  "Business Day" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13  "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14  "Causes of Action" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15  "Chapter 11" means chapter 11 of the Bankruptcy Code.

2.1.16  "Claim" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17  "Classes" means a category of Claims described in this Plan.

2.1.18  "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19  "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.20  "Confirmation Order" means the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

2.1.21  "Debtor" shall mean American Berber, Inc., the debtor in this Bankruptcy Case.

2.1.22  "Disallowed Claim" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor' Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor' Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.23  "Disclosure Statement" means the Disclosure Statement for the Plan of Reorganization filed by Debtor as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.24  "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25  "Distribution" means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

2.1.26  "District Court" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.27  "Effective Date" means the date that is 60 days after entry of a Confirmation Order.

2.1.28  "Estate" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the

commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.29 "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.30 "Filing Date" means May 15, 2019.

2.1.31 "Final Distribution" means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.32 "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.33 "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.34 "Holder" means a holder of a Claim or Interest, as applicable.

2.1.35 "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.36 "Initial Distribution Date" means the Effective Date.

2.1.37 "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.38 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.39 "Plan" means this plan of reorganization as same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.40 "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.41 "Priority Tax Claim" means a Claim against Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.42 "Professional Compensation" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and

reimbursement of expenses incurred, by professionals employed by Debtor and the unsecured creditors' committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.43  "Record Date" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan.  If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.44  "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.45  "Released Parties" means Debtor.

2.1.46   Intentionally Deleted.

2.1.47 "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor' Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action seeking the recovery of Debtor's rights to payment created or arising in the ordinary course of Debtor' business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.48 "Schedules" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.49 "Secured Claim" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.50 "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.51 "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52 "Unsecured Claim" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2    Time.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the

United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3    Events of Default.    Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address.  Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via (i) email or (ii) fax as well as via certified mail to Cameron M. McCord (Jones & Walden, LLC) at the address reflected in the then current directory of the State of Bar of Georgia.  Debtor shall have ten (10) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  If the Notice is not accepted, the Notice shall be deemed delivered three days after service by certified mail or overnight delivery. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 3).  If the Debtor does not cure said default within the specified time period, then the creditor may exercise any all rights and remedies ti may have under applicable law.  In addition, the Bankruptcy Court may retain jurisdiction to hear certain matters even after the case has been closed.

2.4    Notices.    All notices under the Plan shall be in writing.  Unless otherwise specifically provided here in, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case as reflected on the docket for this Bankruptcy Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail to Cameron M. McCord at the address reflected in the then current directory of the State Bar of Georgia.  Receipt of notice by Cameron M. McCord (Jones & Walden, LLC) shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

**Article 3**
**Classification of Claims and Interests**

3.1    Summary.  The categories of Claims and Interests set forth below classify all Claims against Debtor for all purposes of this Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2    Classes:

3.2.1    Class 1 shall consist of the Asserted Priority Claim of Tom Mathis.

3.2.2    Class 2 shall consist of the Secured or Priority Tax Claim of the Internal Revenue Service.

3.2.3    Class 3 shall consist of the Secured or Priority Tax Claim of the Georgia Department of Revenue.

3.2.4    Class 4 shall consist of the Secured or Priority Tax Claims of Governmental Units.

3.2.5    Class 5 shall consist of the General Unsecured Claims.

3.2.6    Class 6 shall consist of the Unsecured Convenience Class Claims.

3.2.7    Class 7 shall consist of the Asserted Claims of Joseph Farless.

3.2.8    Class 8 shall consist of the Asserted Claims of Mitch Smith.

3.2.9    Class 9 shall consist of Debtor's Interest.

**Article 4**
**Treatment of Claims and Interests**

The Classes, the treatment of each Class, and the voting rights of each Class are set forth below.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**4.1**     **Class 1: Asserted Priority Claim of Tom Mathis:**

Class 1 shall consist of the asserted priority claim of Tom Mathis as asserted in American Berber Proof of Claim 24[2] in the amount of $12,700.00 (the "Class 1 Claim"). Debtor disputes such claim and shall file an objection to claim on or before the hearing date on the Plan of Reorganization.

Mr. Mathis also filed a proof of claim in Howard E. Johnson, Case No. 19-41149 (the "Johnson Case") and was treated in Class 4 in Mr. Johnson's confirmed Chapter 11 plan (the "Johnson Plan"). Mr. Johnson also anticipates filing an objection to Mr. Mathis' claim. Notwithstanding anything else in this document to the contrary, the Class 1 Claim shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and Debtor's obligations hereunder shall be reduced accordingly.

If the Class 1 Claim is Allowed as a priority claim, it shall be paid in full on the first anniversary of the Effective Date of the Plan. If the Class 1 Claim is Allowed as an unsecured claim, it shall be reclassified and treated as a Class 5 claim. If the Class 1 Claim is disallowed, Debtor shall not pay anything on such claim.

The Claim of the Class 1 Creditor is Impaired by the Plan and the holder of Class 1 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

**4.2**     **Class 2: Secured or Priority Tax Claim of the Internal Revenue Service:**

Class 2 shall consist of the Secured Claims or Priority Tax Claims held by the Internal Revenue Service (the "IRS") which were assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) (the "Class 2 IRS Tax Claim"). The IRS asserts (i) priority claims of $20,448.49 in taxes and interest asserted in American Berber proof of Claim 9 and $600.00 in estimated taxes asserted in American Carpet proof of claim 7 and (ii) general unsecured claims of $9,997.27 under the American Berber proof of claim 9 and $1,600.00 under American Carpet proof of claim 7.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. §502 and was November 12, 2019. Any claim asserted or assertable by the IRS on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtor's right to object to the same and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged.  Debtor shall pay any claim of the IRS assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the

---

[2] Because this is a case involving substantial consolidation, this Plan shall refer to the specific case in which each proof of claim has been filed. Examples include "American Berber proof of claim 1" or "AB1" or "American Carpet proof of claim 1" or "AC1".

terms herein, and the IRS shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

### A. Class 2A IRS Unsecured Priority Tax Claim

Class 2A shall consist of the Unsecured Priority Tax Claims of the IRS. Debtor is aware of the of Class 2A IRS Unsecured Priority Tax Claims totaling $21,048.49 consisting of (i) $20,448.49 in taxes and interest asserted in American Berber proof of Claim 9, and (ii) $600.00 in estimated taxes asserted in American Carpet proof of claim 7.[3]

Debtor will pay the Class 2A IRS Unsecured Priority Tax Claim in equal monthly payments of $568.88 each, commencing on the 28th day of the 1st full month following the Effective Date and continuing by the 28th day of each subsequent month until the Class 2A Priority Tax Claim is paid in full. Notwithstanding anything to the contrary herein, Debtor shall pay the full balance of the Class 2A IRS Unsecured Priority Tax Claim on the 60th month following the Filing Date (i.e. May 15, 2024) unless the IRS agrees to accept payments beyond said date, which the IRS may communicate by continuing to accept payments by Debtor. Interest shall accrue on the principal balance of the Class 2B Unsecured Priority Tax Claim at the annual rate of 3% or such lesser rate as agreed to by the IRS. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2A received by the Internal Revenue Service shall be applied to the principal tax obligation of the Class 2A Priority IRS Tax Claim owed by Debtor pursuant to Class 2A until paid in full.

A failure by the Debtor to make a payment on the Class 2A IRS Unsecured Priority Tax Claim to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS. In the event of a default under Class 2A IRS Unsecured Priority Tax Claim, the IRS must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default under Class 2A IRS Unsecured Priority Tax Claim following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the IRS may (a) enforce the entire amount of its then outstanding Allowed Class 2A IRS Unsecured Priority Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2A IRS Unsecured Priority Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

---

[3] Much of the American Berber proof of claim 9 and all of the American Carpet proof of claim 7 are comprised of estimated corporate and FICA taxes. Debtor believes that such tax is not owed and anticipates obtaining proof of payment to request the IRS to amend its proof of claim or objecting to such claim.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

The Holder of the Class 2A claim is impaired and entitled to vote to accept or reject the Plan.

**B. General Unsecured Tax Claims**

The balance of the American Berber proof of claim 9 (i.e. $9,997.27) and American Carpet proof of claim 7 (i.e. $1,600.00), together with any further or additional general unsecured tax claim for taxes, penalties or otherwise held by the IRS is and shall be and is classified as a general unsecured tax claim and shall be treated in accordance with Class 5 below.

**4.3    Class 3:          Secured or Priority Tax Claim of the Georgia Department of Revenue:**

Class 3 shall consist of any Secured Claim or Priority Tax Claim held by the Georgia Department of Revenue (the "GDR") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) (the "Class 3 GDR Tax Claim"). Debtor is not aware of any claim filed by the GDR nor has it scheduled any amount due and owing to the GDR.

Any Class 3 GDR Tax Claim (or as otherwise allowed by the Court) shall be paid pursuant to Class 3, and any GDR general unsecured tax claim is specifically classified and will be paid pursuant to the General Unsecured Class 5. Debtor shall pay the Allowed Class 3 GDR Tax Claim in equal monthly payments commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a business day). Interest shall accrue on the principal amount due from the Effective Date at the annual rate of the prime rate as published by the Wall Street Journal on the Effective Date plus three (3) percent per annum or such lesser rate as (i) agreed to by the GDR or (ii) indicated on the applicable GDR proof of claim. Notwithstanding anything to the contrary herein, Debtor shall pay the balance of the Allowed Class 3 GDR Tax Claim with a balloon payment on the 5-year anniversary of the Filing Date (i.e. May 15, 2024) unless the GDR agrees to a longer payment term, which such agreement may be communicated by the GDR continuing to accept monthly payments after May 15, 2024. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3 received by the Georgia Department of Revenue shall be applied to the principal tax obligation of the Class 3 GDR Tax Claim owed by Debtor pursuant to Class 3. Debtor's Class 3 payments shall be applied in the following order: (i) interest accruing on the Class 3 GDR Tax Claim after the Effective Date under the Plan, (ii) the taxes included in the Class 3 GDR Tax Claim and (iii) interest and penalties which accrued prior to the Filing Date and Effective Date.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. §502 and was November 12, 2019. Any claim asserted or assertable by the GDR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtor's right to object to the same and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtor shall pay any claim of the GDR assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and the GDR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

A failure by the Debtor to make a payment on the Class 3 GDR Tax Claim to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR. In the event of a default under Class 3, the GDR must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may: (a) enforce the entire amount of its then outstanding Allowed Class 3 GDR Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 3 GDR Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the GDR that is not otherwise assessable or due and payable on or prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall, and the right of the GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of the GDR and obligations and liability of Debtor or its property regarding any claim of the GDR against Debtor which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall be treated and fixed in accordance with the Plan, and any additional, other or amended claims assessable or due and payable prior to the Filing Date and not timely asserted or amended by the GDR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 3 Creditor is Impaired by the Plan and the holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

**4.4**    **Class 4:  Priority or Secured Tax Claims of Tennessee Department of Labor – Bureau of Unemployment Insurance; Other Governmental Units Not Otherwise Classified:**

Class 4 shall consist of any Priority or Secured Claim of the Tennessee Department of Labor – Bureau of Unemployment Insurance and any other governmental unit entitled to priority under 11 U.S.C. §507(a)(8) which is not otherwise specifically classified in the Plan ("Class 4 Governmental Unit Claim").  The amount of any claim of a Governmental Unit that is not assessed or assessable on or prior to the Effective Date, and the right of the particular governmental unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the particular governmental unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code if applicable. The Tennessee Department of Labor – Bureau of Unemployment Insurance filed American Berber proof of claim 26 asserting a priority claim under § 507(a)(8) for $983.58 (the "TNDOL Priority Claim"). Debtor shall pay such TNDOL Priority Claim at the rate of $100 per month commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day) with interest accruing at the annual rate of 5.5% or at the rate otherwise as required by the Bankruptcy Code, until paid in full.

Debtor is not aware of any other Holders of Class 4 Governmental Unity Claims not otherwise classified in the Plan. In the event there are other Allowed Holders of Class 4 Governmental Unit Priority Tax Claims, Debtor shall pay such Allowed Class 4 Government Unit Priority Tax Claims at the rate of $100 per month commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 5.5% or at the rate otherwise as required by the Bankruptcy Code, with a final balloon payment on the 5th anniversary of the Filing Date (i.e. May 15, 2024) unless such Holder agrees to a longer payment term, which such agreement may be communicated by the Holder continuing to accept monthly payments after May 15, 2024.   Debtor reserves the right to pay any Class 4 Governmental Unit Claim in full at any time. Debtor is authorized to sell its assets free and clear of liens and pay the proceeds of such sale in the order of priority of liens as described in the Sale Procedures (as defined below) to the extent of the proceeds. Specifically, Debtor is authorized to sell any asset free and clear of any asserted tax lien, and pay any proceeds from the sale of any such asset in accordance with the Sale Procedures.

A failure by the Debtor to make a payment under Class 4 to the Holder of a Class 4 Governmental Unit Tax Claim pursuant to the terms of the Plan shall be an event of default as to such Governmental Unit.  In the event of a default under Class 4, the Holder of a Class 4 Governmental Unit Tax Claim must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries.   Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default

following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Holder of a Class 4 Governmental Unit Tax Claim may (a) enforce the entire amount of its then outstanding Allowed Class 4 Governmental Unit Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class Governmental Unit Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Claim of any Class 4 Creditor is Impaired by the Plan and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

Nothing contained herein shall prohibit Debtor from objecting to the Class 4 Claims for any reason.

**4.5**    **Class 5:**        **General Unsecured Claims:**

Class 5 shall consist of General Unsecured Claims. Debtor shall pay the General Unsecured Creditors in full without interest in five equal annual payments, commencing on May 5 of the first full year following the Effective Date, continuing on May 5 of the following three years, and ending with a final payment on May 5 of the fifth full year following the Effective Date.

Debtor anticipates and projects but does not warrant the following Holders of Class 5 Claims and the following distributions:

| Anticipated Holder | Proof of Claim | Estimated Claim | Estimated Annual Distribution | Estimated Total Distribution | Estimated Percentage Total Distribution |
|---|---|---|---|---|---|
| ADD-BAC | AB23 | $ 151,318.96 | $    30,263.79 | $    151,318.96 | 100% |
| American Express Travel Related Services Company, Inc. | AC2 | $      4,723.53 | $        944.71 | $      4,723.53 | 100% |
| Bill Smitherman CPA LTD | AB14 | $      5,050.00 | $      1,010.00 | $      5,050.00 | 100% |
| Binsfield Engineering | AC9 | $      1,710.05 | $        342.01 | $      1,710.05 | 100% |
| Camden Flooring Co. | AB20 | $          0.00[4] | $          0.00 | $          0.00 | 0% |
| Capital One | | $      1,221.92 | $        244.38 | $      1,221.92 | 100% |

[4] Debtor has objected or will object prior to the confirmation hearing to this proof of claim.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Carpet Capital Fire Protection | | $ | 2,109.00 | $ | 421.80 | $ | 2,109.00 | 100% |
| Combustion & Controls Solution | AC6 | $ | 8,273.86 | $ | 1,654.77 | $ | 8,273.86 | 100% |
| D &W Paper Tube Inc. | | $ | 2,499.00 | $ | 499.80 | $ | 2,499.00 | 100% |
| Dak America | | $ | 31,219.20 | $ | 6,243.84 | $ | 31,219.20 | 100% |
| Epic Enterprises Inc | | $ | 4,375.29 | $ | 875.06 | $ | 4,375.29 | 100% |
| eShipping, LLC | AB15 | $ | 18,918.27 | $ | 3,783.65 | $ | 18,918.27 | 100% |
| FILPA USA, Inc | AB18/ AC10 | $ | 65,235.72 | $ | 13,047.14 | $ | 65,235.72 | 100% |
| First Source Worldwide, LLC | AB11 | $ | 5,545.06 | $ | 1,109.01 | $ | 5,545.06 | 100% |
| Georgia Machine | AB5 | $ | 4,465.00 | $ | 893.00 | $ | 4,465.00 | 100% |
| Georgia Power | AB25 | $ | 67,484.05 | $ | 13,496.81 | $ | 67,484.05 | 100% |
| Grady Stafford | | $ | 1,152.00 | $ | 230.40 | $ | 1,152.00 | 100% |
| Graphic Tufting Center Inc | | $ | 3,521.67 | $ | 704.33 | $ | 3,521.67 | 100% |
| Greenville Colarants | | $ | 4,106.85 | $ | 821.37 | $ | 4,106.85 | 100% |
| H&H Sales, Inc. dba Morgan Lee Supply | AB7 | $ | 2,533.47 | $ | 506.69 | $ | 2,533.47 | 100% |
| Hayes Plumbing & Elec. Inc | | $ | 3,382.10 | $ | 676.42 | $ | 3,382.10 | 100% |
| IRS | AB9 | $ | 9,997.27 | $ | 1,999.45 | $ | 9,997.27 | 100% |
| IRS | AC7 | $ | 1,600.00 | $ | 320.00 | $ | 1,600.00 | 100% |
| Lawson Electric | AB19/ AC11 | $ | 19,886.00 | $ | 3,977.20 | $ | 19,886.00 | 100% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Metal Crafters AG, Inc. | AB10 | $ | 6,474.95 | $ | 1,294.99 | $ | 6,474.95 | 100% |
| Millis Corporate Offices | | $ | 14,516.07 | $ | 2,903.21 | $ | 14,516.07 | 100% |
| Oerilkon | AB8 | $ | 11,788.93 | $ | 2,357.79 | $ | 11,788.93 | 100% |
| Pasco Parts & Systems Co. Inc | AC5 | $ | 2,200.00 | $ | 440.00 | $ | 2,200.00 | 100% |
| Phoenix Chemical Company LLC | | $ | 3,235.20 | $ | 647.04 | $ | 3,235.20 | 100% |
| Polymer Solutions Group Finance, LLC d/b/a Phoenix Chemical Company | AB27 | $ | 79,980.18 | $ | 15,996.04 | $ | 79,980.18 | 100% |
| ProGlobal Products LLC | AB12 | $ | 5,690.92 | $ | 1,138.18 | $ | 5,690.92 | 100% |
| Radco Industries Inc | | $ | 2,341.11 | $ | 468.22 | $ | 2,341.11 | 100% |
| Southeastern Freight Lines Inc. | AB16 | $ | 4,071.45 | $ | 814.29 | $ | 4,071.45 | 100% |
| Southern Lubes & Fuels | AC4 | $ | 4,096.97 | $ | 819.39 | $ | 4,096.97 | 100% |
| Techmer PM Polymer Modifiers | | $ | 2,920.32 | $ | 584.06 | $ | 2,920.32 | 100% |
| The McCurry Law Firm, LLC | AB3 | $ | 13,984.66 | $ | 2,796.93 | $ | 13,984.66 | 100% |
| W.W. Grainger, Inc. | AB1 | $ | 1,156.68 | $ | 231.34 | $ | 1,156.68 | 100% |

| | | | | | | |
|---|---|---|---|---|---|---|
| Whitfield Electric Motor Sales | AB4 | $ | 12,598.84 | $ | 2,519.77 | $ | 12,598.84 | 100% |
| **Total** | | $ | 586,438.13 | $ | 117,076.88 | $ | 586,438.13 | 100% |

Certain creditors listed above, including (i) CapitalOne, (ii) Georgia Power and (iii) The McCurry Law Firm, LLC, filed a substantially identical proof of claim in the Johnson Case and was treated in Class 4 in the Johnson Plan. Notwithstanding anything else in this document to the contrary, any claim listed above shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and Debtor's obligations hereunder shall be reduced accordingly.

The Claims of the Class 5 Creditors are Impaired by the Plan and the holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.6      Class 6: Unsecured Convenience Class Claims:

Class 6 shall consist of unsecured claims less than or equal to $1,000.00. Holders of Allowed Class 6 Claims shall be paid in full without interest on January 5th of the first year following Effective Date. Debtor anticipates payments to unsecured creditors based upon the following Holders of Class 6 Claims and following distributions:

| Anticipated Holders | Proof of Claim | Estimated Claim | | Estimated Total Distribution | | Estimated Percentage Total Distribution |
|---|---|---|---|---|---|---|
| ARCO | | $ | 766.25 | $ | 766.25 | 100% |
| Auto Plus Auto Parts | | $ | 629.34 | $ | 629.34 | 100% |
| Averitt Express | AB2 | $ | 79.20 | $ | 79.20 | 100% |
| Blalock Machine Shop LLC | | $ | 225.00 | $ | 225.00 | 100% |
| Calhoun LP Gas | | $ | 875.58 | $ | 875.58 | 100% |
| Calhoun Wholesale Supply | | $ | 88.83 | $ | 88.83 | 100% |

| | | | | | |
|---|---|---|---|---|---|
| Caylor Industrial Sales, Inc. | AB22 | $ | 269.21 | $ | 269.21 | 100% |
| Comcast Business | | $ | 202.34 | $ | 202.34 | 100% |
| Fastenal | AB17 | $ | 252.46 | $ | 252.46 | 100% |
| Fi-Tech, Inc. | AC8 | $ | 157.56 | $ | 157.56 | 100% |
| Georgia Carpet Finishers Inc | AC1 | $ | 688.78 | $ | 688.78 | 100% |
| Georgia Natural Gas | AC13 | $ | 703.01 | $ | 703.01 | 100% |
| Holston Gases | | $ | 581.97 | $ | 581.97 | 100% |
| Marketing Alliance Group Inc | AB13 | $ | 750.00 | $ | 750.00 | 100% |
| Michael Johnston | | $ | 252.00 | $ | 252.00 | 100% |
| Motion Industries | | $ | 98.26 | $ | 98.26 | 100% |
| Osterman Propane LLC | AB6 | $ | 875.58 | $ | 875.58 | 100% |
| Rockholt Equipment Inc. | | $ | 38.20 | $ | 38.20 | 100% |
| Samplemasters, Inc | | $ | 286.92 | $ | 286.92 | 100% |
| Santex Waste Services | | $ | 585.96 | $ | 585.96 | 100% |
| Southeastern Supply Inc | AC3 | $ | 149.10 | $ | 149.10 | 100% |
| Tennessee Department of Labor – Bureau of Unemployment Insurance | AB26 | $ | 70.00 | $ | 70.00 | 100% |
| Testing Services | | $ | 190.00 | $ | 190.00 | 100% |

| | | | | |
|---|---|---|---|---|
| Uline | | $ 626.70 | $ 626.70 | 100% |
| United States Postal Service | | $ 243.00 | $ 243.00 | 100% |
| UPS | | $ 455.00 | $ 455.00 | 100% |
| Whitfield Trailer Leasing | | $ 160.50 | $ 160.50 | 100% |
| Xpress Paper & Chemical LLC | | $ 508.04 | $ 508.04 | 100% |
| **Total** | | $ 10,808.79 | $ 10,808.79 | 100% |

The Claim of any Class 6 Creditor is Impaired by the Plan and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

Nothing contained herein shall prohibit the Debtor from objecting to the Class 6 Claims for any reason.

**4.7     Class 7: Asserted Claims of Joseph Farless**

Class 7 consists of the claim of Joseph Farless filed on July 30, 2019 as proof of claim 11 in the amount of $636,363.63 (the "Asserted Farless Claim"). Debtor and Johnson removed the pending Gordon County Superior Court Action to the Bankruptcy Court, where it became Adversary Proceeding No. 19-4027-bem (the "Farless Adversary Proceeding"). The Farless Adversary Proceeding is currently pending before the Bankruptcy Court. The Asserted Farless Claim shall be modified by any Final Order authorizing or approving a settlement or issuing a judgment in the Farless Adversary Proceeding and such amount shall be the "Allowed Farless Claim." To the extent that there is any Allowed Farless Claim, such claim shall be satisfied in full as provided for in Class 5 of the Johnson Plan.

The Holders of the Class 6 Claims are impaired and entitled to vote to accept or reject the Plan.  Nothing contained herein shall prohibit the Debtor from objecting to the Class 6 Claims for any reason.

Nothing herein shall constitute an admission as to the nature, validity, or amount of a claim. Debtor reserves the right to object to any and all claims.

**4.8     Class 8: Asserted Claims of Mitch Smith**

Class 8 consists of the contingent claim of Mitchell Smith in the amount of $700,000.00 (the "Asserted Smith Claim"). Debtor and Johnson filed Adversary Proceeding No. 19-04230-bem asserting claims against Smith including but not limited to preference claims pursuant to 11 U.S.C.

§ 547 (the "Smith Adversary Proceeding"). The Smith Adversary Proceeding is currently pending before the Bankruptcy Court. The Asserted Smith Claim shall be modified by any Final Order authorizing or approving a settlement or issuing a judgment in the Smith Adversary Proceeding against Smith and in favor of Johnson or Debtor. Such amount shall be the "Allowed Smith Claim." To the extent that there is any Allowed Smith Claim, such claim shall be satisfied as provided in Class 6 of the Johnson Plan.

The Claims of the Class 8 Creditor is Impaired by the Plan and the holder of a Class 8 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of a claim. Debtor reserves the right to object to any and all claims.

### 4.9    Class 9:  Interest Claims:

Class 9 consists of the Interest Claims. All pre-petition interests in the Debtor (including both American Berber, Inc. and American Carpet Group, Inc.) shall be cancelled. 100% of the ownership in Debtor will be issued to Howard E. Johnson in exchange for new value of $15,000.00 paid to the Debtor on the effective date.

Notwithstanding anything to the contrary in this Plan or in Debtor's organizational documents, Debtor shall be authorized make distributions to any shareholders in the amount of actual taxes attributable to Debtor and required to be paid by such shareholder.

### 4.10    Sale Procedures

After the Confirmation Date, Debtor is authorized to sell or refinance assets, free and clear of liens, claims and encumbrances in the Plan and described herein (the "Sale Procedures").   In the event the applicable assets are subject to secured claims, Debtor is authorized to sell or refinance such property free and clear of liens, claims and encumbrances on the following terms:

(i)    If selling or refinancing substantially all of its property, Debtor may sell or refinance such property for any amount (a release amount) that is at least equal the outstanding amount of Allowed Secured Claims securing such property; and

(ii)    If selling or refinancing a portion of its property, Debtor may sell or refinance such property for any amount (a release amount) that is at least equal to the outstanding amount of the Allowed Secured Claims securing such property.

Such amounts are referred to in the Plan as the "Release Amount.[5]"  The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid as follows: (i) first to cover any *ad valorem* property taxes associated with the particular asset, (ii) then secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as

---

[5] Nothing herein shall prohibit or bar a creditor from accepting a lesser Release Amount.

set forth in the Plan.

The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the Sale Procedures herein.

### Article 5
### Treatment of Unclassified Claims

5.1     Summary.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on, or receiving Distributions under the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with Article 5 of the Plan and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel.  As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $20,000.00 in the Chapter 11 case of American Berber, Inc. and a prepetition retainer in the amount of $20,000.00 in the Chapter 11 case of American Carpet Group, Inc. As of the date hereof, the fees and expenses incurred by the Firm have exceeded the retainer. Debtor shall pay any unpaid allowed Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm. Debtor is not aware of any other Administrative Expense Claims. The Firm shall retain its security interest in the pre-petition retainer.  Debtor is paying post-petition bills and does not expect any claims for unpaid post-petition goods and services other than possible professional fees.  Debtor will incur quarterly trustee fees which Debtor intends to pay when due.

5.2     Administrative Expense Claims.

5.2.1     Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

5.2.2     Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such

Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

       5.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

       Debtor may pay professional fees incurred after confirmation of the Plan without Court approval.  Debtor shall pay all pre-confirmation fees of professionals as payment of same is approved by the Court.

**Article 6**
**Means for the Implementation of the Plan**

       6.1    Parties Responsible for Implementation of the Plan.  Upon confirmation, Debtor will be charged with administration of the Case.  Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office.  Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.  Debtor shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor.

       6.2    Sources of Cash for Distribution.

       The source of funds for the payments pursuant to the Plan is the continued operation of the Business as well as potential recovery under the pending adversary proceeding against James Mitchell Smith.

       The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other entity to do so.  Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business.  Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

       6.3    Preservation of Causes of Action.  In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action).  The failure of Debtor to

specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

6.4     Effectuating Documents, Further Transactions. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5     Exemption from Certain Transfer Taxes and Recording Fees. Pursuant to 11 U.S.C. §1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6     Further Authorization. Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7     Liabilities of Debtor. Debtor will not have any liabilities except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor

in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

**Article 7**
**Distributions**

7.1     Disbursing Agent.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor or its agent.

7.2     Distributions of Cash.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

7.3     No Interest on Claims or Interests.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

7.4     Delivery of Distributions.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified by such Holder in writing of such Holder's then-current address, at which time Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtor and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim.  Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned,

refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period").  Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume.  The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved.  For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

7.5     Distributions to Holders as of the Record Date.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6     Fractional Dollars.  Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7     Withholding Taxes.  Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

**Article 8**
**Procedures for Treating and Resolving Disputed Claims**

8.1    Objections to Claims.  Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

8.2    No Distributions Pending Allowance.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3.    Resolution of Claims Objections.  On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

**Article 9**
**Provision for Assumption of Unexpired**
**Leases and Executory Contracts**

9.1    Provisions Regarding Executory Contracts.

Debtor is not aware of any leases or executory contract.

Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

**Article 10**
**Effect of Plan on Claims and Interests**

10.1    Vesting of Debtor's Assets.   Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2.    Discharge of Debtor.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

10.3    Setoffs. Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

10.4    Exculpation and Limitation of Liability.  Under the Plan, Debtor's current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, gross negligence or fraud, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan.  Fees and expenses which Debtor owes to its Professionals are excluded from this Exculpation.

10.5    Injunction.      Upon entry of a Confirmation Order in this case, except as provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

10.6    Effect of Confirmation.

10.6.1  Binding Effect.  On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor, even following

a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

10.6.2 Effect of Confirmation on Automatic Stay. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

10.6.3 Filing of Reports. Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.6.4 Post-Effective Date Retention of Professionals. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtor will employ and pay professionals in their ordinary course of business.

**Article 11**
**Conditions Precedent**

11.1    Intentionally Deleted.

11.2    Conditions to the Effective Date. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

11.2.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtor in its reasonable discretion;

11.2.3 Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3    Waiver of Conditions to Confirmation or Consummation. The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor). The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 12**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

12.1    Retention of Jurisdiction.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

12.1.4  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

12.1.5  To hear and rule upon all applications for Professional Compensation;

12.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8  To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10 To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.11 To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

12.1.12 To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13 To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14 To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Case; and

12.1.15 To enter a final decree.

12.1.16 To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

12.2    Alternative Jurisdiction.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.  Notwithstanding anything to the contrary herein, Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

12.3    Final Decree.  The Bankruptcy Court may, upon application of Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

## Article 13
## Miscellaneous Provisions

13.1    Modification of the Plan.  Debtor shall be allowed to modify this Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, Debtor may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject

this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

     13.2    Allocation of Plan Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

     13.3    Applicable Law. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

     13.4    Preparation of Estate Returns and Resolution of Tax Claims. Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

     13.5    Headings. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

     13.6    Revocation of Plan. Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

     13.7    No Admissions; Objection to Claims. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

     13.8    No Bar to Suits. Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

13.9    Exhibits/Schedules.  All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

13.10   Conflicts.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

### Article 14
### Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.  No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this 12th day of October, 2020

**AMERICAN BERBER, INC.** both in its own name and as successor by substantive consolidation to American Carpet Group, Inc.

By:  */s/ Howard Johnson*
Name:  Howard Johnson
Title: Owner

**JONES & WALDEN, LLC**

/s/ *Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 14065
 699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300 Telephone
(404) 564-9301 Facsimile
cmccord@joneswalden.com

## CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail and e-mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Vanessa A. Leo
Office of the United States Trustee
362 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

This 12th day of October, 2020.

**JONES & WALDEN, LLC**

/s/ *Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 14065
 699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300 Telephone
(404) 564-9301 Facsimile
cmccord@joneswalden.com
Attorney for Debtor