UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| AMERICAN BERBER, INC., and | ) | Case No.  19-41154-bem |
| | ) | |
| AMERICAN CARPET GROUP, INC., | ) | Case No.  19-41150-bem |
| | ) | |
| *Debtors.* | ) | (Substantively consolidated and |
| | ) | jointly administered under |
| | ) | Case No. 19-41154-bem |

## NOTICE OF FILING EXAMINER'S SECOND INTERIM REPORT

**COMES NOW** Burr & Forman LLP, counsel to Gary M. Murphey, as the Court-appointed examiner in the above-styled cases ("Examiner"), and hereby files the attached *Examiner's Second Interim Report.*

Respectfully submitted, this 20th day of May, 2021.

**BURR & FORMAN LLP**

/s/ Erich N. Durlacher
Erich N. Durlacher
Georgia Bar No. 235563
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia  30363
(404) 685-4313 [telephone]
(404) 214-7387 [facsimile]
edurlacher@burr.com

**Counsel to the Examiner**

45577872v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| AMERICAN BERBER, INC., and | ) | Case No.  19-41154-bem |
| | ) | |
| AMERICAN CARPET GROUP, INC., | ) | Case No.  19-41150-bem |
| | ) | |
| *Debtors.* | ) | (Substantively consolidated and jointly administered under Case No. 19-41154-bem |
| | ) | |
| | ) | |

## EXAMINER'S SECOND INTERIM REPORT

On February 25, 2021, the United States Trustee for Region 21 appointed Gary Murphey (the "Examiner") as Chapter 11 Examiner for American Berber, Inc. ("American Berber") and American Carpet Group, Inc. ("American Carpet Group" and together with American Berber, the "Debtors") in the substantively consolidated Chapter 11 cases that are being jointly administered under Case No. 19-41154-bem (the "Debtors' Cases"), pursuant to the order of the Court entered February 25, 2021 (Dkt No. 147) (the "Examiner Order").

The Examiner filed his First Interim Report on April 20, 2021 (Dkt. No. 163)(the "First Interim Report"). This is the Examiner's Second Interim Report.

## I.    Examiner's Duties, Responsibilities, and Powers

The United States Trustee's Motion for Appointment of a Chapter 11 Trustee or Examiner filed November 17, 2020 (Dkt No. 119) (the "Examiner Motion") detailed specific issues for the Examiner's consideration during the course of his investigation, including without limitation, (i) irregularities regarding sales, receivables, and receipts, (ii) discrepancies regarding personnel, and (iii) omission of other material information.

The Examiner's duties, responsibilities, and powers can be summarized as follows:

45577872v1

a. Conduct an investigation of the Debtors as appropriate.

b. Review and comment on the Debtors' post-petition business.

c. Investigate and report on information contained in the Debtors' schedules and monthly operating reports.

d. Investigate and report on the Debtors' post-petition customer sale and collection activity.

e. Investigate and report on the Debtors' post-petition use of personnel.

f. Review the Debtors' Plan of Reorganization and evaluate feasibility.

g. Report to the United States Trustee conduct that may justify the appointment of a trustee under 11 U.S.C. § 1104.

## II. Examiner's Work Since First Interim Report

Since the filing of the First Interim Report, the Examiner and/or personnel under his direct supervision ("Examiner Personnel") have continued to review documentation, interview the Debtors' former employees, and request additional information and documentation. A Scheduling Order was entered on May 20, 2021 that requires the Debtors to provide requested documentation by May 31, 2021. *See* Scheduling Order (Dkt. No. 167).

While awaiting the Debtors' compliance with the Scheduling Order, the Examiner desires to apprise the United States Trustee and the Court of his findings since the First Interim Report regarding (a) the Buy Carpet Direct Today, Inc. bank account and (b) the Debtors' carpet tile inventory.

## III. Buy Carpet Direct Today Bank Account

As described in the First Interim Report, there is a Synovus bank account under the name "Buy Carpet Direct Today, Inc." with an account number ending in 7761 (the "BCDT Account"). The Examiner has noted that the BCDT Account activity is reflected on the Debtors' QuickBooks accounts (the "Company Books"), but it has been excluded from the Debtors'

Schedule A/B: Assets – Real and Personal Property (American Berber – Dkt. No. 24; American Carpet Group – Dkt. No. 15) (the "Debtors' Schedules") and the Debtors' various Monthly Operating Reports (American Berber - Dkt. Nos. 37, 56, 64-65, 76-77, 88-90, 92, 94, 96-97, 105-106, 108-110, 117, 124-135, 142-144, & 164-165; American Carpet Group – Dkt. Nos. 22, 32, 36, & 42-43) (the "Debtors' MORs").[1]

The Debtors have contended that the BCDT Account does not contain the Debtors' funds despite the BCDT Account activity being reflected on the Company Books.  The Debtors contend these funds belong to Mr. Johnson.  The Examiner has noted, however, that the BCDT Account likewise has been excluded from Mr. Johnson's Schedule A/B: Assets – Real and Personal Property (Dkt. No. 25) (the "Johnson Schedules") and the various Monthly Operating Reports (Dkt. Nos. 31, 40, 44, 46, 50-51, 56-57, 59, 68, 70, 78, 94, 99, 120-121, & 125)(the "Johnson MORs")[2] filed in Mr. Johnson's individual Chapter 11 case: *In re Howard E. Johnson*, Case No. 19-41149-bem, United States Bankruptcy Court for the Northern District of Georgia, Rome Division (the "Johnson Case").

The BCDT Account should be scheduled and disclosed in either the Debtors' Cases or the Johnson Case.  There is no basis for excluding the BCDT Account from *both* cases.  This Second Interim Report updates additional findings regarding the BCDT Account.

a.      **Pre-Petition Account Activity**

**Exhibit I** contains the prepetition BCDT Account activity.  The Examiner notes that

        i.          Total prepetition deposits were approximately $1.6 million with substantially

---

[1] The Debtors have recently filed their January and February 2021 MORs, which now include the BCDT Account. *See* Dkt. Nos. 164 & 165; *see also* Section III.d, *infra*.

[2] Mr. Johnson filed one Post-Confirmation Quarterly Operating Report for August 1, 2020 through September 30, 2020 (Dkt. No. 125).

45577872v1

all of the deposits consisting of payments from the customer Menards.

ii.      For each of the Menards payments, the Company Books likewise reflect the application of such payment to the Debtors' outstanding Menards invoices.

iii.     Of the $1.6 million paid by Menards, Examiner Personnel were provided payment information (*i.e.*, check copies) noting the payee as "American Carpet Group."

iv.     Such activity – the Debtors' issuing invoices to Menards and Menards paying these invoices – is indicative that the Debtors were providing goods and/or services to Menards.

v.      If all of the funds deposited into this account were the result of the Debtors' activities, then it follows that such funds are the Debtors' property. The Debtors' assertions to the contrary are belied by the Company Books.

Additionally, Examiner Personnel have reviewed the prepetition disbursement activity reflected on **Exhibit I** as well as information contained in the Company Books. Based on this review, Examiner Personnel have observed that the disbursement transactions fall into the following categories (as noted on **Exhibit I** with lowercase footnotes):

a.      Transfers to American Berber's Georgia Bank & Trust bank operating account which were included on the Debtors' Schedules.

b.      Resin purchases (typically used in American Berber's manufacturing process).

c.      Carpet tile purchases (one transaction).

d.      Mitch Smith settlement.

e.      Debtors' counsel payment.

4

45577872v1

Substantially all of the BCDT Account disbursements likewise appear to arise from the Debtors' activities, which is further indication that the BCDT Account funds are the Debtors' funds.

**b.      Interviews with Debtors' Former Employees**

Examiner Personnel conducted a joint telephone interview with Ms. Jennifer Harris and Mr. Robert Miller, former employees of the Debtors, on April 27, 2021.  Additional joint telephone interviews were conducted on May 3, 2021 and May 12, 2021.  During the course of these interviews, Examiner Personnel were informed:

    i.      Ms. Harris and Mr. Miller worked for the Debtors for several years with each having involvement in recording transactions in the Company Books.

    ii.     Ms. Harris and Mr. Miller assisted in producing information for the Debtors' Schedules as well as the Johnson Schedules.

    iii.    Ms. Harris prepared the Debtors' MORs and the Johnson MORs.

    iv.     Ms. Harris and Mr. Miller indicated they were familiar with the BCDT Account and considered the BCDT Account funds to be the Debtors' funds.

    v.      Ms. Harris and Mr. Miller stated they were each instructed by Mr. Johnson to exclude the BCDT Account from the Debtors' Schedules, the Debtors' MORs, the Johnson Schedules, and the Johnson MORs.

**c.      Post-Petition Account Activity**

The Examiner noted in his First Interim Report that while the BCDT Account activity in the Company Books and the bank statements did not match exactly, most transactions in the Company Books could be matched to the bank statements.  *See* First Interim Report, p. 4.  Based on additional information and documents provided by the Debtors, Examiner Personnel have performed a preliminary analysis on the BCDT Account's post-petition activity reflected in the Company Books

5

(*see* **Exhibit II**).

By comparing the bank statement notations and memo field descriptions within the Company

Books, Examiner Personnel have produced the following summary of post-petition deposits into the

BCDT Account as reflected in the Company Books:

| Ref | Deposit Source | Amount |
|---|---|---|
| A | Fieldturf | $ 196,583 |
| B | Square | 173,844 |
| C | Tile Sales | 95,077 |
| D | Sale of Equipment | 21,235 |
| E | Deposits from Skip Johnson | 72,500 |
| F | Scrap Metal 180 N Industrial | 200 |
| | Total post-petition deposits per Company Books | $ 559,439 |

### i.    Fieldturf

The BCDT Account statements and the Company Books indicate Fieldturf deposits

commenced in October 2019. Based on interviews with Ms. Harris and Mr. Miller, these deposits

were for contract manufacturing services provided to Fieldturf. Mr. Miller produced a post-petition

agreement dated September 2, 2019 (*see* **Exhibit III**) signed by Mr. Miller, Mr. Johnson and Ms.

Harris that purportedly allows Ms. Harris and Mr. Miller to "…use American Berber's equipment to

perform commission duties" and that "[t]hese services will be provided through Buy Carpet Direct."

Mr. Miller stated the agreement contemplated that Ms. Harris and he would contract directly

with Fieldturf and provide services using the Debtors' equipment. Mr. Miller and Ms. Harris would

be responsible for paying the labor costs and paying American Berber for the use of its equipment.

Mr. Miller stated that since neither he nor Ms. Harris had financial software or a business bank

account, the agreement referenced Buy Carpet Direct so that Mr. Miller and Ms. Harris could bill

Fieldturf using the Company Books and deposit the proceeds into the BCDT Account. All billings

to Fieldturf during this period were billed from Company Books with the Debtors recording a sale

45577872v1

and a corresponding receivable.  The invoices, however, noted Buy Carpet Direct as seller (*see* **Exhibit IV** for a specimen invoice).  The Examiner notes that this post-petition agreement was not approved by the Court in the Debtors' Cases or the Johnson Case.  The Examiner has not determined what administrative claims, if any, may result from the terms of this agreement as Mr. Miller and Ms. Harris contend they have not received any funds from the Debtors pursuant to this agreement.

ii.    **Square and Tile Sales**

Examiner Personnel were informed the BCDT Account deposits denoted as "Square" and "Tile Sales" relate to the Debtors' carpet tile sales.  The "Square" transactions are credit card transactions and the "Tile Sales" are cash or check transactions.  Based on Examiner Personnel review of the BCDT Account statements and Company Books, both types of transactions began appearing in the BCDT Account activity in January 2020 and continued through January 2021.  Ms. Harris provided the Square account's access credentials to Examiner Personnel.  Examiner Personnel were able to access and download all historic activity by individual customer transaction.  This transaction download is included as **Exhibit V**.  Examiner Personnel noted that "American Carpet Sales" is the billing entity per the account setup and on the individual transactions.  According to Ms. Harris and Mr. Miller, American Carpet Sales is a "d/b/a" of American Berber and American Carpet Group.  While all deposit activity noted on **Exhibit V** were deposited into the BCDT Account, Examiner Personnel noted that the Square settings have been modified recently so any new activity in the Square account will be deposited into the Debtors' DIP account.

d.    **Debtors' Subsequent Inclusion of BCDT Account in Monthly Operating Reports**

Subsequent to the filing of the First Interim Report, the Debtors filed their January 2021 and February 2021 MORs (Dkt Nos. 164 & 165).  The Examiner notes the BCDT Account is included on each of those reports.  As of the date of this report, the Debtors have not amended the Debtors'

Schedules or the prior Debtors' MORs to include the BCDT Account.

## IV.    Carpet Tile Inventory

As noted herein, BCDT Account deposits from credit card sales of carpet tile inventory commenced in January 2020. Examiner Personnel reviewed the Company Books and prepared analyses of carpet tile purchases (*see* **Exhibit VI**) and sales (*see* **Exhibit VII**). As evidenced on the exhibits, all but the last purchase of carpet tile inventory was paid from the Debtors' pre-petition operating account with Georgia Bank & Trust. Moreover, all invoices for sales of carpet tile inventory were issued by the Debtors. This is indicative that (a) the funds from the sale of carpet tile inventory deposited in the BCDT Account are the Debtors' funds and that (b) any unsold carpet tile inventory purchased by the Debtors are the Debtors' assets.

Based solely on the carpet tile purchases and sales on the Company Books, the Examiner has estimated the Debtors' remaining on-hand carpet tile inventory. Relying solely on estimates and the Company Books, the Examiner estimates that the Debtors may have as much as $300,000 of on-hand carpet tile inventory as of February 28, 2021 (*see* Exhibit **VIII**). This $300,000 estimate of carpet tile inventory, however, is inconsistent with:

a.    Examiner Personnel's tour of 100 Thomas Street premises on March 9th where only rolled carpet – not carpet tile – was observed.

b.    No carpet tile inventory being reported in the Debtors' Schedules.

c.    No carpet tile inventory being reported in the Debtors' inventory reports provided to the Examiner.

d.    No carpet tile inventory being reported in the Johnson Schedules.

Upon further inquiry with Mr. Miller regarding the discrepancy, Mr. Miller informed Examiner Personnel that on March 9th, Mr. Miller was directed by Mr. Johnson to avoid taking

8

Examiner Personnel to the premise's storage area that contained the carpet tile inventory. Mr. Miller and Mr. Harris indicated that they were directed by Mr. Johnson to exclude the carpet tile inventory from the American Berber Schedules and the Johnson Schedules.

Mr. Miller estimates that there is several hundred thousand dollars' worth of carpet tile inventory – consistent with the Examiner's preliminary estimate in **Exhibit VIII**. On May 14th, the Examiner requested Mr. Miller to provide evidence of unsold carpet tile inventory still maintained at the Debtors' premises at 100 Thomas Street. **Exhibit IX** contains copies of the photos Mr. Miller made on May 14th of the carpet tile inventory at the Debtors' 100 Thomas Street facility.

Based on the Examiner's analysis as of the date of this report, it appears that, similar to the funds in the BCDT Account, the Debtors' carpet tile inventory has not been included in the Court filings in the Debtors' Cases or the Johnson Case.

## V.    Subsequent Reports

The Examiner intends to issue additional reports as additional requested information is received.

45577872v1

Respectfully submitted this 20th day of May, 2021.

/s/ Gary M. Murphey
Gary M. Murphey
3330 Cumberland Boulevard
Suite 500
Atlanta GA 30339
(770) 933-6855 [dial]
(404) 252-1839 [fax]
murphey@rfslimited.com

**Chapter 11 Examiner for the Debtors**

45577872v1

## EXHIBIT LIST

| | |
|---|---|
| I | BCDT Account Pre-Petition Activity |
| II | BCDT Account Post-Petition Activity |
| III | Miller/Harris – Johnson Agreement (Fieldturf) |
| IV | Buy Carpet Direct Specimen Invoice (Fieldturf) |
| V | Square Account Sales/Payments from January 2020 through May 4, 2021 |
| VI | Carpet Tile Inventory Purchases through February 2021 |
| VII | Carpet Tile Inventory Sales through February 2021 |
| VIII | Estimated Carpet Tile Inventory as of February 28, 2021 |
| IX | Miller Carpet Tile Inventory Photos on May 14, 2021 (100 Thomas Street) |

45577872v1

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, a copy of the foregoing *Notice of Filing Examiner's Second Interim Report* was electronically filed and served via the Court's CM/ECF system upon all parties registered to receive notice.

/s/ Erich N. Durlacher
Erich N. Durlacher
Georgia Bar No. 235563
BURR & FORMAN LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia  30363
(404) 685-4313 [telephone]
(404) 214-7387 [facsimile]
edurlacher@burr.com

45577872v1