UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| AMERICAN BERBER, INC., and | ) | Substantively Consolidated |
| | ) | |
| AMERICAN CARPET GROUP, INC., | ) | Case No. 19-41154-bem |
| | ) | |
| Debtors. | ) | |

**UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7 OR ALTERNATIVELY FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE AND REQUEST FOR EXPEDITED HEARING**

Mary Ida Townson, the United States Trustee for Region 21, in furtherance of her administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. §§ 1104(a) and 1112(b), and files this Motion to Convert Case to Chapter 7 or Alternatively for the Appointment of a Chapter 11 Trustee and Request for Expedited Hearing, and in support thereof states as follows:

1.  The Court has jurisdiction of this matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

2.  Pursuant to 28 U.S.C. § 586(a)(3) and (8), the United States Trustee's duties include supervising the administration of chapter 11 cases. The United States Trustee files this motion in furtherance of his duties and responsibilities pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307.

**I.   COURSE OF PROCEEDINGS**

3.  In May 2019, American Carpet, Inc., ("Carpet") and American Berber, Inc., ("Berber") each filed a voluntary petition for relief under chapter 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Georgia.[1]

4. In August 2019, the Court entered orders substantively consolidating Berber's estate with that of Carpet.[2]

5. On its petition, Berber estimated assets of approximately $1,694,357.37 and estimated liabilities between $500 million to $550 million.[3] Berber's List of 20 Largest Unsecured Creditors[4] included total debts of $5,196,171.02.[5]

6. Berber's Schedule A/B lists only one operating bank account: an account with Georgia Bank and Trust valued at the time of filing the petition for relief of $5,218.00.[6]

7. According to the Disclosure Statement[7] filed on October 12, 2020, Berber was formed by Howard E. Johnson ("Johnson") in 1997 as a carpet manufacturing company. Since its inception, Berber has been located in Dalton, Georgia.

8. According to the petition, schedules, and documents filed with the court, Johnson is the Chief Executive Officer and 100% owner and equity security holder of Berber.[8]

9. Johnson serves as Berber's authorized representative and fiduciary vested with nearly all of the powers and duties of a trustee under chapter 11 of the United States Bankruptcy Code.

---

[1] In its Disclosure Statement (Dkt. 112, Pg. 6), Berber stated: "American Carpet Group, Inc. was incorporated in 2005 and is wholly owned by Howard E. Johnson. The entity was never utilized as an operating business. It was instead utilized as a tradename as "Berber" carpet had fallen out of style."
[2] Dkt. Nos. 63 and 66.
[3] Dkt. Nos. 1 and 54.
[4] Dkt. No. 1.
[5] On July 24, 2019, the debtor in possession filed amended Schedules E/F and Summary of Assets and Liabilities reflecting an increase in total debts in the amount of $5,288,503.94. *See Dkt. No. 54*.
[6] Dkt. No. 24, Page 7.
[7] Dkt. No. 112, Pg. 5.
[8] Dkt. Nos. 1, 24 and 54.

10. On November 17, 2020, the United States Trustee filed a Motion to Appoint a Chapter 11 Trustee or in the Alternative an Examiner[9] (the "Motion"), in light of conflicting and irregular information provided by Berber in monthly reports, which appeared to evidence fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor."[10]

11. On February 25, 2021, the Court granted the United States Trustee's Motion and directed the United States Trustee to appoint an examiner.[11] The United States Trustee appointed Gary Murphey (hereinafter the "Examiner").[12]

12. The Examiner has conducted a thorough review of Berber's business and financial affairs and has filed three reports on his investigation with the Court.

13. The Examiner's investigation uncovered evidence of the following:

    a. cessation of Berber's business operations;

    b. undisclosed revenue, assets, contractual agreements, and financial accounts belonging to Berber;

    c. commingling of Berber's business assets with personal assets of Howard E. Johnson; and

    d. conduct of Howard E. Johnson suggesting the possibility of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtors of or by current or former management of the debtor.

---

[9] Dkt. No. 119.
[10] The United States Trustee does not suggest that these are the only possible bases for the appointment of a trustee in this case.
[11] Dkt No. 147.
[12] Dkt. No. 163.

**II. Examiner's Investigation and Reports**

14.     Immediately after his appointment, the Examiner conducted an onsite inspection of the Berber facility. Two Berber employees were present during the onsite inspection for the sole purpose of providing access to the premises.

15.     The Examiner's initial report, filed April 20, 2021, concluded that Berber's production operations had ceased. The facility appeared dark and abandoned. Subsequently, the Examiner learned that Georgia Power ceased providing electricity to the Berber facility as a result of nonpayment.

16.     The Examiner also reported that, contrary to Berber's schedules and other pleadings, there was no evidence of inventory totaling approximately $300,000.00.

17.     The Examiner interviewed a former Berber employee regarding the absence of inventory. The Examiner learned that Johnson had directed the former Berber employee not to show the Examiner any of the inventory allegedly held in the facility. On May 14, 2021, the Examiner obtained photographic evidence of the inventory held at Berber's physical location, including carpet title squares arranged on shelving in the facility.

18.     Berber's schedules listed assets consisting of office supplies and equipment valued at approximately $5,000.00; account receivable less than ninety days old valued at approximately $727,781.86 and over ninety days old totaling $592,827.73 with an unknown value; and finished goods valued at approximately $956,357.51.[13]

19.     Berber's books and records reviewed by the Examiner appeared to show Berber had assets totaling approximately $2,940,914.00, consisting of a building that houses Berber's business operation valued at approximately $711,240.00; machinery and equipment belonging to

---

[13] Dkt. Nos. 24 and 163.

Berber valued at approximately $2,201,528.00; and office equipment for Berber's business operations valued at approximately $28,146.00.[14]

20. The books and records presented to the Examiner did not include inventory or accounts receivable. The Examiner requested Johnson provide records pertaining to inventory and accounts receivables. To date, Johnson has failed to provide documentation or complete responses to the Examiner's request.

21. Former Berber employees informed the Examiner that his request for additional documentation related to inventory and accounts receivables could not be fulfilled because Johnson instructed them to destroy numerous boxes of accounting and business records.

22. The Examiner's investigation of the Berber's QuickBooks uncovered an undisclosed financial account with Synovus Bank, assigned account number XXXXX7761 in the name of "Buy Carpet Direct Today" ("BCDT"). Despite the financial account being titled in the name of BCDT, the Examiner was able to identify and match nearly every transaction in Berber's QuickBooks to the financial accounting statement transactions of BCDT.[15]

23. The Examiner concluded that the BCDT account belongs to Berber because all funds deposited into the account stemmed from Berber's business operations and therefore the account is an asset of Berber's bankruptcy estate.

24. Johnson disputes the BCDT account was an asset belonging to Berber. Instead, Johnson claimed the BCDT account was his personal financial account. However, Johnson did not list the BCDT account as an asset on Schedule A/B of his personal chapter 11 petition for relief.[16]

---

[14] Dkt. No. 163.
[15] *Id.*
[16] *See In re Howard E. Johnson*, filed in the Northern District of Georgia, Rome Division on May 15, 2019, (Case No. 19-41149-bem).

25. The Examiner obtained additional evidence of financial mismanagement from a former employee who provided information and documentation reflecting use of the employee's personal credit card to make purchases for Johnson's personal use, benefit, and enjoyment. The Examiner also received evidence establishing the former employee received reimbursement for the credit card charges from funds maintained in the BCDT account belonging to Berber.

26. The Examiner also discovered that Johnson utilized funds in the BCDT account belonging to Berber to pay the personal legal fees and expenses totaling $20,0000.00 to professionals on the eve of filing his personal chapter 11 bankruptcy[17] in the Northern District of Georgia, assigned Case No. 19-41149-bem.

### III. THE COURT SHOULD CONVERT CASE

#### A. Citation of Applicable Statute

27. The Bankruptcy Code provides for the conversion of a Chapter 11 case to a Chapter 7 case upon a showing of cause. "Conversion to Chapter 7 will streamline the process and will avoid the costly and perilous confirmation process, avoid continual accrual of quarterly fees, and avoid any further Debtor's attorney fees being paid from the Chapter 7 bankruptcy estate." *Off.Comm. of Unsecured Creditors v. Moultrie (In re Moultrie)*, 586 B.R. 498, 506 (Bankr. N.D. Ga. 2018). Section 1112(b)(1) provides:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.[18]

---

[17] *Id.*
[18] 11 U.S.C. § 1112(b)(1).

28. Unless the Debtor can prove certain exceptions, conversion or dismissal is mandatory under § 1112 if cause is proven. *Pegasus Wireless Conversion v. Tsao, (In re Pegasus Wireless Corporation)*, 391 Fed. Appx. 802, 802-03 (11th Cir. 2010) ("With regard to § 1112, BAPCPA made dismissal or conversion mandatory upon a showing of cause subject to specified expectation").

29. Section 1112(b)(4) sets forth 16 illustrations of "cause." The subsections applicable to this case are:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and
> (B) gross mismanagement of the estate;[19]

Of course, this list is illustrative and non-exhaustive, and courts have considered non-enumerated causes.[20]

### B. Substantial or Continuing Loss and Absence of Reasonable Likelihood of Rehabilitation

30. Whether there is cause to convert under § 1112(b)(4)(A) is a two-fold inquiry.[21] First, the Court must determine whether there has been substantial or continuing loss to or diminution of the estate.[22] Second, the Court must determine whether there is an absence of a reasonable likelihood of rehabilitation.[23] "The purpose behind section 1112(b)(4)(A) paints the perfect context; Congress wanted to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditor's expense when there is no hope of rehabilitation."[24]

---

[19] 11 U.S.C. § 1112(b)(4)(A) and (B).
[20] See *Warren v. Young (In re Warren)*, 2015 WL 3407244, at *4-6 (B.A.P. 9th Cir. May 28, 2015).
[21] *Moultrie*, 586 B.R. at 502.
[22] *Id*.
[23] *Id*.
[24] *In re Roan Valley, LLC*, 2009 WL 6498188 at *1 (Bankr. N.D. Ga. 2009) (internal quotations omitted).

31. A debtor operating with declining asset values or who continues to experience negative cash flow will meet the first inquiry.[25] As detailed above, Berber has ceased all business operations, is no longer generating revenue and has declining asset values.

32. As a result of Berber ceasing all business operations there is negative cash flow, and there is not a reasonable likelihood of rehabilitation. "The focus is whether the Debtor's business prospects justify continuance of the reorganization effort. This element can be satisfied by showing a debtor's ability to fund the case is highly uncertain."[26]

33. It is highly unlikely that Berber will be able to successfully fund this case. To date, Berber's actual revenue from business operation is $0.00. Without income Berber cannot fund a successful plan of reorganization and therefore the case should be converted to chapter 7.

**C. Gross Mismanagement of the Estate.**

36. Under the Bankruptcy Code, a debtor in possession is vested with significant powers which come with certain responsibilities and duties."[27] Mismanagement of the estate may include failure by a debtor to comply with the requirements of the Bankruptcy Code.[28]

37. Berber's fiduciary, Howard E. Johnson, failed to disclose significant assets of the estate in the schedules and pleading filed with the Court, has destroyed business records, commingled and converted assets belonging to Berber for his own personal benefit.

38. A debtor must be transparent in its schedules and the failure to do so is indicative of gross mismanagement of the estate. See *Moultrie*, 586 B.R. at 504-05 (finding that a debtor's failure to disclose certain assets and a timber sale contract was "indicative of the Debtor's gross mismanagement of the estate."). Similarly, the Debtor in this case has a duty to be transparent and

---

[25] *Moultrie*, 586 B.R. 498 at 502.
[26] *Moultrie*, 586 B.R. 498 at 504.
[27] *Id.*
[28] *Id.* finding that failure to disclose and schedule certain assets and to disclose the sale of timber until after its occurrence warrants finding of "cause" to conversion).

-8-

has breached that duty, indicating gross mismanagement. Thus, there is more than sufficient cause to convert this case to chapter 7.

**IV. THE COURT MAY DIRECT APPOINTMENT OF A TRUSTEE.**

39. Alternatively, in the event the Court finds that conversion is not appropriate, the Court should appoint a Chapter 11 trustee. The facts detailed above show that a neutral, disinterested party capable of managing the estate is necessary.

40. Section 1104(a)(1) of the Bankruptcy Code provides that a chapter 11 trustee may be appointed, upon request by a party in interest, "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause. . ."[29]

41. The plain language of section 1104(a)(1) (specifically, the use of the word shall") indicates that courts may not look beyond a finding of "cause" in considering appointment of a trustee. See *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) (stating that "[11 .S.C. § 1104](a)(1) requires the bankruptcy court, upon motion, to appoint a trustee when the movant has proved 'cause' which the statute defines to include incompetence and gross mismanagement."); *In re National Staffing Servs., LLC*, 2005 WL 3729404 at *2 (Bankr. N.D. Ohio Nov. 21, 2005) (11 U.S.C. § 1104(a)(1) provides for "the mandatory appointment of a trustee upon a specific finding of 'cause.'").

42. In the alternative, a court can order the appointment of a trustee pursuant to the provisions of section 1104(a)(2). This subsection provides that a court shall order the appointment of a trustee if "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. . ."[30] When a trustee is appointed "in the interests of creditors," it is

---

[29] 11 U.S.C. § 1104(a)(1).
[30] 11 U.S.C. § 1104(a)(2).

not necessary to find that the debtor or management engaged in any misdeeds."[31] Under section 1104(a)(2), a court should consider the debtor's trustworthiness; past and present performance; likelihood of successful reorganization; absence of creditor confidence in current management; and the benefits of appointing trustee balanced against the cost of appointment.[32]

43.     As detailed above, Berber's current management is not properly managing the debtor. There is gross mismanagement, incompetence, lack of creditor confidence, and no likelihood of a rehabilitation of the debtor. Thus, if the Court finds that conversion is not appropriate, based on the facts above, it should appoint a chapter 11 trustee to manage the debtor.

## V.     REQUEST FOR EXPEDITED HEARING

44.     The United States Trustee respectfully submits that Johnson's role as manager of this debtor-in-possession should terminate as soon as possible.

45.     Federal Rule of Bankruptcy Procedure 2002(a)(4) provides that a motion, such as the instant motion, which seeks dismissal or conversion of a bankruptcy case must be served on not less than 21 days' notice.

46.     Federal Rule of Bankruptcy Procedure 9006 provides, in pertinent part:

(c)     Reduction
(1) In general. Except as provided in paragraph (2)[33] of this subdivision, when an act is required or allowed to be done at of within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

---

[31] *Sharon Steel*, 871 F.2d at 1226
[32] *In re Eurospark Indus.*, 424 B.R. 621, 621 (Bankr. E.D. N.Y. 2010).
[33] The instances where the reduction of time is not permitted as set forth in Fed. R. Bankr. P. 9006(c)(2) are not applicable.

47. Accordingly, in accordance with Federal Rule of Bankruptcy Procedure 9006, the Court may shorten the time period on which a motion to dismiss may be made, and the United States Trustee respectfully requests that the Court do so in this instance.

## VI. CONCLUSION

48. For the reasons expressed above, the Court should convert this case for cause under 11 U.S.C. § 1112 or alternatively direct the appointment of a chapter 11 trustee under 11 U.S.C. § 1104.

<div style="margin-left:auto">

MARY IDA TOWNSON
UNITED STATES TRUSTEE
REGION 21

  /s/  Vanessa A. Leo
Vanessa A. Leo
Georgia Bar No. 410598
Trial Attorney

</div>

Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303
202.567.1504
Vanessa.A.Leo@usdoj.gov

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day electronically filed the foregoing *United States Trustee's Motion To Convert To Chapter 7 Or Alternatively For The Appointment Of A Chapter 11 Trustee And Request For Expedited Hearing* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following party who has appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Matthew R. Brooks    matthew.brooks@troutmansanders.com
Erich N. Durlacher    edurlach@burr.com, awyatt@burr.com
Timothy M. Gibbons    tgibbons@chamblisslaw.com    jgranillo@chamblisslaw.com
Michael D. Hurtt    hurttnotices@windstream.net; hurttecfnotices@gmail.com; G17451@notify.cincompass.com
David W. Johnson    david@hurttlaw.com, david.johnson8@gmail.com; G17451@notify.cincompass.com
Leon S. Jones    ljones@joneswalden.com, jwdistribution@joneswalden.com; cparker@joneswalden.com; cmccord@joneswalden.com; lpineyro@joneswalden.com; arich@joneswalden.com; ewooden@joneswalden.com
Jeffrey W. Maddux    jmaddux@chamblisslaw.com    lthreadgill@chamblisslaw.com; mculp@chamblisslaw.com; sbarham@chamblisslaw.com; gfairbanks@chamblisslaw.com; ttucker@chamblisslaw.com; gchambers@chamblisslaw.com; cgarrett@chamblisslaw.com
Thomas T. McClendon    tmcclendon@joneswalden.com    jwdistribution@joneswalden.com
Cameron M. McCord    cmccord@joneswalden.com    jwdistribution@joneswalden.com; ljones@joneswalden.com; ahirsch@joneswalden.com; cparker@joneswalden.com; lbrown@joneswalden.com; lpineyro@joneswalden.com
Gary M. Murphey    murphey@rfslimited.com
Office of the United States Trustee    ustpregion21.at.ecf@usdoj.gov
Thomas D. Richardson    TRichardson@Brinson-Askew.com, Tdr82454@gmail.com
Matthew J. Tokajer    jwdistribution@joneswalden.com; ljones@joneswalden.com
Stuart Freeman Wilson-Patton    agbankgeorgia@ag.tn.gov, Stuart.Wilson-Patton@ag.tn.gov
Adolyn C. Wyatt    dsteiger@burr.com

I further certify that on this day, I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties at the address shown for each:

American Berber, Inc.
PO Box 430
Calhoun, GA 30703

American Berber, Inc.
Attn Registered Agent: **HOWARD E JOHNSON**
100 Thomas Street
Calhoun, GA, 30701

American Carpet Group, Inc.
PO Box 430
Calhoun, GA 30703

American Carpet Group, Inc.
Attn Registered Agent: **HOWARD E JOHNSON**
100 Thomas Street
Calhoun, GA, 30701

Dated: July 22, 2021

                                                /s/ Vanessa A. Leo
                                                Vanessa A. Leo
                                                Georgia Bar No. 410598
                                                Trial Attorney

Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303
202.567.1504
Vanessa.A.Leo@usdoj.gov